**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SHERYL BROWN

      Plaintiff,

                                     Case No. 23-cv-11244

v.                                 Honorable Linda V. Parker

JACOB FEHR, et al.,

      Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' DAUBERT MOTION TO EXCLUDE TREATING PHYSICIAN PROXIMATE CAUSE OPINION TESTIMONY (ECF No. 18)

This matter is before the Court on Defendants' *Daubert* motion to exclude

testimony of Wasim Rathur, M.D, a family medicine specialist, and Ayman

Tarabishy, M.D., a physical medicine and rehabilitation specialist ("PM&R"),

regarding the proximate cause of Plaintiff's alleged injuries.  (ECF No. 18.)

Plaintiff opposes this motion on the grounds that the doctors are properly qualified

as experts.  Because Brown's experts did not form their causation opinions based

on sufficient facts or data and reliable principles and methods, the Court **GRANTS**

Defendants' motion to exclude Brown's experts.  (ECF No. 18.)

## I.     BACKGROUND

This case arose from a motor vehicle accident which occurred on July 12,

2022.  In the accident, Brown was a passenger on a charter bus which was struck

from behind by Defendant Jacob Fehr, who was driving a semi-truck in the scope of his employment for Defendant IFS International Freight Systems, Inc. ("IFS"). Brown suffered preexisting conditions of her back and knees, which she alleges were exacerbated by the accident. At issue in this motion are the causation opinions of two of Brown's treating physicians: Dr. Rathur and Dr. Tarabishy.

**A. Dr. Rathur's Deposition**

Brown had six appointments with Dr. Rathur, from approximately five weeks after the accident until February 2023, when he transferred her care to Dr. Tarabishy. Dr. Rathur treated Brown with physical/occupational therapy and injections to her right knee and lower back. (ECF No. 18-1, PageID.260.) Although Brown had multiple physical complaints, Dr. Rathur focused his treatment on her knees and back. (*Id.* at PageID.254.)

Dr. Rathur believed that his role in the case was as a treating physician of Brown. (*Id.* at PageID.244.) He used the process of a differential diagnosis to evaluate Brown's conditions and the cause of those conditions. (*Id.* at PageID.246.) Dr. Rathur testified that Brown had chronic conditions including arthritis and hypothyroidism. (*Id.* at PageID.243.) He was also aware that Brown had a left knee replacement in 2020 and arthritis of the lower lumbar spine. (*Id.*)

In treating Brown and forming his causation opinion, Dr. Rathur reviewed an MRI taken of Brown three months after the accident, on October 7, 2022. (*Id.* at

PageID.244.)  He also reviewed the hospital record from an x-ray of Brown which was performed shortly after the accident, but not the x-ray itself.  (*Id.* at PageID.253.)  Dr. Rathur reviewed no pre-accident imaging and had not treated Brown prior to the accident. (*Id.* at PageID.257.)  Furthermore, Dr. Rathur's only information about the accident came from Brown's self-reported history.  (*Id*. at PageID.247.)  In describing the accident, Dr. Rathur stated that he believed that Brown was sitting by the rear window of the bus when she was jolted.  (*Id*.)  However, he was unaware of the severity of the accident.  (*Id*.)

When asked if Brown's injuries were caused by the accident, Dr. Rathur testified that he "would assume" that the accident was the cause as, prior to the accident Brown was "doing fine."  (*Id*. at PageID.261.)  He stated he was "assuming" Brown was functioning independently prior to the accident, based on her self-reported medical history.  (*Id*. at PageID.257.)  Dr. Rathur also viewed Brown's meniscal tear shown on her MRI as an acute, rather than chronic, finding which suggested it was caused by the accident.  (*Id*.)  He was unaware if Brown had used a cane or received home care before due to the arthritis in her knee and was further unaware of the severity of Brown's preexisting conditions.  (*Id*. at PageID.251.)

3

**B. Dr. Tarabishy's Deposition**

Dr. Rathur referred Brown to Dr. Tarabishy, who first treated Brown on

January 12, 2023.  (ECF No. 18-2, PageID.279.)  Dr. Tarabishy only saw Brown a

handful of times, including one procedure, one injection, and a few follow-up

appointments. (*Id.* at PageID.275.)  He viewed his role to be as a treating

physician, not as "an expert witness who reviews the chart and renders an

opinion." (*Id.* at PageID.276.)  Specifically, he focused more on treating Brown's

condition than on the cause of the condition, although he did note that she reported

that the accident exacerbated her back issues. (*Id.* at PageID.293.)

The only imaging reviewed by Dr. Tarabishy was the October 7, 2022, MRI

of Brown's knee.  (*Id.* at PageID.282.)  Dr. Tarabishy focused on the treatment of

Brown's back and did not do significant active treatment of her knee.  (*Id.* at

PageID.285.)  He was unable to determine if the meniscal tear was acute or

degenerative, as the only information he had were Brown's reported symptoms and

the timing of the accident.  (*Id.* at PageID.287.)  He was unaware of the details of

the accident, including the speed of either vehicle.  (*Id.* at PageID.312.)

## II.    STANDARD

Federal Rule of Evidence 702 requires the trial judge to perform a

"gatekeeping role" when considering the admissibility of expert testimony.

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).  The Sixth

Circuit has described the district court's gatekeeping function as an "obligation . . .

to exclude from trial expert testimony that is unreliable and irrelevant." *Conwood*

*Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002) (internal quotation

marks omitted).

The Sixth Circuit has held that the gatekeeping role progresses in three steps.

First, the witness must be qualified according to his or her "knowledge, skill,

experience, training, or education." *In re Scrap Metal Antitrust Litig.*, 527 F.3d

517, 529 (6th Cir. 2008) (quoting Fed. R. Evid. 702).  Second, the expert's

testimony must be relevant, in that it will help "the trier of fact to understand the

evidence or to determine a fact in issue." *Id.* (same).  Third, the testimony must be

reliable.  *Id.*  (same).

Rule 702 provides "general standards to assess reliability: whether the

testimony is based upon 'sufficient facts or data,' whether the testimony is the

'product of reliable principles and methods,' and whether the expert 'has applied

the principles and methods reliably to the facts of the case.'" *Id.* (quoting Fed. R.

Evid. 702). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993),

the Supreme Court "provided a non-exclusive checklist for trial courts to consult in

evaluating the reliability of expert testimony." *In re Scrap Metal Antitrust Litig.*,

527 F.3d at 529 (citing *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001)).

The checklist includes "testing, peer review, publication, error rates, the existence

and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community." *Id.* (quoting *Langan*, 263 F.3d at 621). "The test of reliability is 'flexible,'" however, "and the Daubert factors do not constitute a 'definitive checklist or test,' but may be tailored to the facts of a particular case." *Id.* (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)).

## III.   ANALYSIS

Defendants argue that Dr. Rathur's and Dr. Tarabishy's causation opinions are not based on sufficient facts and are not the product of reliable principles and methods. (ECF No. 18, PageID.221.)  Plaintiff argues that the doctors' opinions are sufficiently reliable as they relied on a clinical examination, reviewed imaging including an MRI and x-ray, and performed physical exams of Brown.  (ECF No. 19.)  The Court agrees with Defendants.

In ruling on expert opinions of this type, courts distinguish between diagnoses and etiologies.  A diagnosis is an opinion about what disorder caused a set of symptoms observed, whereas an etiology is an opinion about what caused the disorder diagnosed.  *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 669 (6th Cir. 2010). Rule 702 does not bar a treating physician from offering an etiology, but the etiology must meet the requirements of the rule and *Daubert*.  *Id.* at 673; *Finley v. Mora*, No. 22-1886, 2023 WL 7550447 at *3 (6th Cir. Nov. 14, 2023).  Furthermore, just

because an expert's *diagnosis* is reliable does not necessarily mean that an expert's

*etiology* is reliable. Here, Dr. Rathur and Dr. Tarabishy's causation opinions at issue

are etiologies, as they go to the cause of the disorder, not the identification of the

disorder which was causing Brown's symptoms.

The Court considers three factors in assessing whether a differential etiology

is reliable: "(1) Did the expert make an accurate diagnosis of the nature of the

disease? (2) Did the expert reliably rule in the possible causes of it? (3) Did the

expert reliably rule out the rejected causes?" *Tamraz*, 620 F.3d at 674. "If the

court answers 'no' to any of these questions, the court must exclude the ultimate

conclusion reached." *Id.* (citing *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171,

179 (6th Cir. 2009)).

It does not render an etiology admissible simply by calling it a "differential

diagnosis" or "differential etiology" – the opinion must still meet the test outlined

in *Tamraz*. *See Finley*, 2023 WL 7550447 at *4. "[S]imply claiming that an expert

used the 'differential diagnosis' method is not some incantation that opens the

*Daubert* gate." *Bowers v. Norfolk S. Corp.*, 537 F. Supp. 2d 1343, 1360 (M.D. Ga.

2007). Generally, "self-reporting of the chronology of the accident and [the

plaintiff's] symptoms [are] insufficient to support an etiological conclusion."

*Finley*, 2023 WL 7550447 at *3.

Here, each doctor intends to opine that the accident aggravated Brown's underlying conditions, causing Brown's symptoms. However, each doctor formed their opinion exclusively on Brown's self-reported chronology of her symptoms and post-accident imaging. This is an insufficient basis to support an etiological conclusion. *Finley*, 2023 WL 7550447, at *3; *Brewer v. United States*, No. 21-cv-12686, 2024 WL 1580169, at *4 (E.D. Mich. Apr. 11, 2024) (citing *Finley*, 2023 WL 7550447, at *3).

The Court further notes that the cases cited by Brown in her response brief primarily consist of out of circuit cases which are not binding on this Court and, furthermore, predate *Tamraz* and *Finley*. This Court must follow the most recent guidance from the Sixth Circuit. Brown does not address *Tamraz* or its progeny in her brief. However, even under the tests outlined in the cases cited by Brown, the causation opinions are not sufficiently reliable as the treating physicians did not reliably rule out alternative causes of her injuries.

Brown's brief emphasizes the fact that she is allegedly an eggshell plaintiff and argues that the causation opinions are relevant to the questions of liability and damages. Although caselaw on eggshell plaintiffs may be relevant to the ultimate questions of liability and damages, it has no bearing on Dr. Rathur's or Dr. Tarabishy's ability to offer reliable opinions as to the cause of Brown's condition. The ultimate question for the instant motion is reliability, not relevance.

Here, there is no indication that Dr. Rathur reliably ruled out alternative causes of Brown's symptoms or that his exclusion of alternative causes would have been reliable. Consequently, his opinion on causation must be excluded. Dr. Rathur did not review any pre-accident imaging and based his causation opinion solely on Brown's description of the accident, and the information he did have about the accident was limited. He also did not know Brown's full medical history. This is the stereotypical case which illustrates that a doctor may offer a reliable diagnosis but not a reliable etiological conclusion. As a treating physician, he was understandably "more concerned with identifying and prospectively treating his patient's condition than isolating the incident that may have caused it." *Finley*, 2023 WL 7550447 at *3.

As with Dr. Rathur, there is no indication that Dr. Tarabishy reliably ruled out alternative causes of Brown's symptoms. He also did not have a complete medical history and did not review any pre-accident imaging. Furthermore, he was unable to say that Brown's meniscal tear was acute or degenerative with a reasonable degree of medical certainty. (ECF No. 18-2, PageID.314.) Consequently, his opinion on causation must also be excluded. To the extent that the doctors intend to merely restate the information they were told by Brown, an expert designation is inappropriate.

9

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to exclude the causation

opinions of Dr. Rathur and Dr. Tarabishy is **GRANTED**.  To be clear, the doctors

may still testify as to their diagnosis of Brown's injuries, their treatment of Brown,

and whether her injuries are generally consistent with a motor vehicle accident.

They may also characterize certain findings generally as chronic or acute.

However, they may not testify that the accident was the cause of her injuries.

  **SO ORDERED**.

s/ Linda V. Parker    
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 20, 2025